JOSEPH WATSON v. ORANGE A. ROODE.

[FILED SEPTEMBER 17, 1890.]

1. **Warranty**: PLEADING: PRESUMPTION. Where an action is brought on a contract of warranty, and the petition is silent as to whether the contract is in writing, there is no presumption that it exists in parol, and the written warranty is admissible in evidence at the trial.

2. ———— : PURCHASER MUST RELY UPON. The purchaser of personal property must have relied upon the statements made by the seller, as to the quality of the article sold, in order to maintain an action for a breach of the warranty.

3. ———— : MAY INCLUDE PATENT DEFECTS. The vendor is liable for patent defects in the property sold, if it is so stipulated in the warranty.

4. ———— : PAROL VARIATION: EVIDENCE. In an action for a failure of a written warranty given on the sale of a horse, which guaranteed that the horse was registered in the Stud Book of England, *held*, incompetent for the seller to prove by parol testimony that prior to the sale he informed the purchaser that the horse was not registered.

5. **Evidence**. Plaintiff's Exhibit B, copied into the opinion, *held*, not proper rebutting testimony, but should have been introduced in chief.

6. ———— : SUBSTITUTION. Before a copy of a letter can be received in evidence over the objection of the opposite party, it should be made to appear that the original is lost or destroyed.

7. **Instructions**: ERROR: WAIVER. Where no exception is taken to the giving of an instruction until after verdict, it is a waiver of the error, if any, in giving such instruction.

8. **Witnesses**: TESTIMONY DISREGARDED. When the general reputation of a witness for truth and veracity in the neighborhood where he resides is proven bad, the jury may entirely disregard the testimony of such witness, except in so far as he is corroborated by other credible testimony.

ERROR to the district court for Gage county. Tried below before MORRIS, J.

*R. S. Bibb,* and *J. E. Bush,* for plaintiff in error:

A contract not alleged to be written will be presumed to be verbal. (*Carr v. Hays,* 110 Ind., 408; *Burrow v. Terre Haute, etc., Co.,* 107 Id., 432; *Langford v. Freeman,* 60 Id., 46; *Goodrich v. Johnson,* 66 Id., 258; *Dorrington v. Meyer,* 8 Neb., 215; *B. & M. R. Co. v. Kearney County,* 17 Id., 511, and cases cited.) A written warranty does not extend to defects which are visible or known to the vendee. (*Long v. Hicks,* 2 Humph. [Tenn.], 395 [41 Am. Dec., 214]; Benjamin, Sales, 616.) As to the extent of warranties in cases similar to this: *Richardson v. Brown,* 1 Bing. [Eng.], 344; *Budd v. Fairmaner,* 8 Id., 48, and citations; *Anthony v. Halsted,* 37 L. T. [N. S.], 433; Benjamin, Sales [1889 Ed.], 815, sec. 935. A false statement in good faith and believed to be true is not actionable. (8 Wait's Act. & Def., 273; *Taylor v. Leith,* 26 O. St., 428.) An actionable warranty must have been relied upon. (*Halliday v. Briggs,* 15 Neb., 219, and cases; *Proctor v. McCoid,* 14 N. W. Rep. [Ia.], 208; Abbott, Tr. Ev., p. 349, sec. 87; *Schuyler v. Russ,* 2 Caines [N. Y.], 202; *Chandler v. Lopus,* 1 Smith L. C., 299–320; *Nye v. Alcohol Works,* 51 Ia., 129; *Bennett v. Buchan,* 76 N. Y., 386; *Leland v. Stone,* 10 Mass., 459; *McCormick v. Kelley,* 9 N. W. Rep. [Minn.], 675; *Marshall v. Drawhorn,* 27 Ga., 275.) As to the instructions requested: the first, Greenleaf, Ev., sec. 461; *Bowers v. People,* 74 Ill., 418; *Gill v. Crosby,* 63 Id., 190; *Gott'ieb v. Hartman,* 3 Colo., 60; the fifth; *Halliday v. Briggs,* 15 Neb., 219; *McCormick v. Kelley,* 9 N. W. Rep., 675, and cases; the ninth, Benjamin, Sales, [1889 Ed.], 817, sec. 938; *Brown v. Bigelow,* 10 Allen [Mass.], 242; *Mulvany v. Rosenberger,* 18 Pa. St., 203; *Vandewalker v. Osmer,* 65 Barb. [N. Y.], 556.

·  *Griggs & Rinaker,* and *Hazlett & Bates, contra:*

A .written warranty is to be construed most strongly against the maker of it. (Benjamin, Sales, p. 611.)   The instrument in this case, fairly interpreted, insures the horse as valuable for the stud. (Benjamin, Sales, sec. 613, note; *Little v. Woodworth,* 8 Neb., 283; *Patrick v. Leach,* Id., 536.) ˙ The injury was one whose effect was internal and hidden, and plaintiff is not chargeable with notice thereof. (*Shewalter v. Ford,* 34 Miss., 417; *Fisher v. Pollard,* 2 Head [Tenn.], 314; *Thompson v. Botts,* 8 Mo., 710; *Callaway v. Jones,* 19 Ga., 277; Benjamin, Sales, p. 611.)   A warrantor may bind himself against visible and known defects. (*Pinney v. Andrus,* 41 Vt., 631; *First National Bank v. Grindstaff,* 45 Ind., 158; *Fletcher v. Young,* 69 Ga., 591.)

NORVAL, J.

This action was commenced by Orange A. Roode to recover damages for an alleged breach of warranty given by Joseph Watson on the sale by him to Roode of a stallion. The amended petition alleges "that on the 18th day of November, 1884, the defendant, as an inducement to plaintiff to purchase from him a certain imported black stallion called "Knight of the Shires," for the sum of $2,000, warranted the said horse to be a foal-getter, and sound in every respect except an enlargement of said horse's bag, which was caused by a kick, and represented the said horse as being then and there sound; that the title to the same was clear, and that the ʼsaid horse was registered in the Stud Book of England, as well as his sire and dam, and would furnish the secretary's receipt for such pedigree; and plaintiff, relying upon said warranty and statements, purchased said horse from the defendant for the sum of $2,000, then duly paid.

"Plaintiff avers that said horse at the time of said sale

was unsound in this: that the enlargement of said horse's bag was hernia at the time of said sale, and in no way was he free from difficulty or trouble, and was of no value whatever; that one testicle of said horse was mashed and completely ruined, and was of no benefit to the said horse, and on account of said hernia, mashed testicle, and urethral gleet, all of which the said horse had at the time of the purchase, combined to cause the death of said horse, to-wit, on the 16th day of June, 1886.

"Plaintiff avers that the pedigree of said horse was not as warranted by the defendant, and that the said defendant never has furnished the secretary's receipt for such pedigree, as agreed to have been done on the part of the defendant.

"Plaintiff avers that said horse was not a good foal-getter, and by reason of above premises plaintiff has sustained damages in the sum of $5,000."

The answer of the defendant admits the sale of the horse to the plaintiff, and denies all the other allegations of the amended petition.

On the trial of the case to a jury a verdict was returned for the plaintiff, assessing his damages at $1,476.50. The defendant filed a motion for a new trial, containing thirty-two assignments of error, which motion being overruled, judgment was rendered upon the verdict. Eight of the assignments are based upon the rulings of the trial court upon the admission and exclusion of testimony. The plaintiff upon the trial offered in evidence the following instrument:

"DILLER, NEB., Nov., 1884.

"In consideration of $2,000, receipt whereof is hereby acknowledged, I have this day sold my imported black English draft horse, 'Knight of the Shires,' to O. A. Roode, and hereby agree to warrant and defend the title to said horse from all claims whatsoever, and I also guarantee said horse to be a foal-getter; and I further state that the

enlargement of said horse's bag was caused by a kick and in no way troubles him; and I further guarantee the said horse to be registered in the Stud Book of England, also his dam as well as his sire, and will furnish the secretary's receipt for such pedigree. It is further agreed that if said O. A. Roode is unable to pay a note bearing even date with this agreement, from the proceeds of the first year's services of said horse, he shall have the privilege of another year's time on $200. Joseph Watson."

The defendant objected to the receiving in evidence of this paper, as incompetent, irrelevant, immaterial, and inadmissible under the pleadings, which objections were overruled, and the defendant took an exception. It will be observed that it is nowhere alleged in the amended petition, that the warranty upon which the action is founded was in writing, nor is a copy of the instrument attached to the pleading.

It is claimed by the plaintiff in error that, as the pleading does not aver that the warranty was in writing, the presumption is that it existed in parol, and that it was incompetent to prove a written warranty. The Indiana cases cited by counsel sustain that view, but they are believed to be contrary to the weight of authority. The rule as laid down in the decisions and in the works on pleadings is, that in an action upon a written contract it is not absolutely necessary that the plaintiff should allege in his pleading that the contract is in writing, and that on the trial under such a pleading the writing is admissible in evidence. (Maxwell, Pleading and Practice, 99; Stephen, Pleading, 33; Abbott's Trial Ev., 522; *Tuttle v. Hannegan*, 4 Daly, 92; *Tuttle v. Hannegan*, 54 N. Y., 686; *Marston v. Swett*, 66 Id., 206.)

Where the contract is one that the law requires to be in writing, and the pleading based thereon is silent as to whether it is in writing or not, the law presumes that a written contract was intended; but where the contract is

valid, whether it be in writing or in parol, there is no such presumption. Under the allegations of the petition in this case the written warranty was competent evidence. The defendant had an undoubted right, had he moved at the proper time, to have required the plaintiff to make his petition more certain and specific by stating that the warranty was a written one, and by attaching a copy thereof to the petition.

The plaintiff on rebuttal introduced in evidence the following paper, signed by the defendant, and marked "Exhibit B:"

"BEATRICE, NEB., April 24, 1885.

"*To whom it may concern:*

I, Joseph Watson, upon honor state that I have known the imported horse 'Knight of the Shires' since he was imported in 1882, by Mr. B. Holmes, of Moline, Ill., and know him to be a good and sure foal-getter, as compared with the best of horses, and any reports to the contrary are without foundation, and malicious. His colt owned by Mr. Thomas McLaughlin, Moline, Ill., took first premium at the Fairbury, Ill., fair; and I will deposit ten dollars with any man that he can show at the Gage county fair five of best colts sired by any horse in the county.

"JOSEPH WATSON."

The defendant objected to the receiving of this paper in evidence, as being immaterial, irrelevant, and not proper rebutting testimony. This objection was overruled. No testimony had been introduced by the defendant that made this paper competent rebutting testimony. It is urged by the defendant that as the writing was made by the defendant and delivered to the plaintiff several months after the purchase of the horse, it therefore could not be relied upon by the plaintiff as a warranty of the horse, for the obvious reason that no new consideration passed for the giving •of this writing. Had this paper been made the basis or foundation of the suit, the position of the de-

fendant would be well taken, for the rule undoubtedly is that where the warranty of an article is given after the sale has been fully made and the property delivered to the purchaser, it must be based upon a new consideration. (Benjamin on Sales, sec. 930; *Morehouse v. Comstock*, 42 Wis., 626.) But this paper was not claimed by the plaintiff to be the warranty declared upon, nor was it received in evidence for that purpose.

It was contended by the defendant on the trial in the lower court that the meaning of the term "foal-getter," as used by the defendant in the written warranty given at the time of the sale, was, that the horse was capable of producing a foal, and did not mean, and was not so understood by the parties at the time, that the horse was a sure foal-getter. The sole purpose and object in introducing this paper in evidence was to show what the defendant meant by the term "foal-getter," and to show what construction the defendant had given the term used in the warranty. It should have been given in evidence in chief and not on rebuttal. The horse was purchased for the stud, as the defendant at the time fully understood, and it is not reasonable to suppose that either party to the agreement at the time expected that the purchaser was paying $2,000 for a horse that was totally unfit for the purpose for which he was bought. The horse, prior to the sale, had received a kick, which caused an enlargement of the bag. The defendant by his warranty guaranteed that this injury in no way troubled him. In other words, that it did not injure him as a "foal-getter." The warranty, when read in the light of the construction subsequently placed thereon by the defendant, and in view of the purpose for which the horse was purchased, and the price paid, is in effect a guaranty that the injury caused by the kick did not unfit the horse for the stud and that he was capable of producing the usual percentage of foals. The testimony fully establishes that the injury unfitted the horse for breeding

purposes, and that he subsequently died on the 16th day of June, 1886, from the effects of the injury he had received prior to the sale to the plaintiff. During the season of 1885 the horse was bred to some eighty mares, and out of the number only fifteen mares were with foal, and but nine of these had living colts. The testimony likewise shows that the usual percentage of foals is two-thirds of the number of mares covered.

The defendant insists that 'the defect in the horse was plain and noticeable at the time of the sale; that it was of such a character as to require the plaintiff to take notice of its extent and effect, and that the injury being plain and visible to the buyer, the warranty did not cover such defect. It is true that the evidence discloses that the blemish on the horse was apparent, and was observed by the plaintiff prior to the sale, yet it was impossible for him to tell whether the defect was of such a character as to injure the horse as a foal-getter. The defendant by his contract warranted against this hidden imperfection, and he cannot escape liability because the injury was one that left an external blemish, plainly visible. While a general warranty does not extend to imperfections known to both parties, yet it is equally well settled that the seller may bind himself as against patent defects, if the warranty is so worded. (*Pinney v. Andrus*, 41 Vt., 631; *Bank v. Grindstaff*, 45 Ind., 158.) The contract of warranty in the case at bar expressly stipulates that "the enlargement of the horse's bag in no way troubled him," and is a guaranty against the extent of the injury. The defendant having by his contract expressly warranted against the defects of the horse, he cannot relieve himself of liability by showing that the plaintiff was aware at the time of the sale that the horse was injured.

It was admitted by the defendant on the trial that the horse was not registered in the Stud Book of England. That the horse was warranted to be so registered is not de-

nied.    The defendant on the trial sought to escape the
force and effect of this clause of his written warranty, by at-
tempting to show that at the time of the sale he informed
the plaintiff that the horse was not registered.    Upon the
cross-examination of the plaintiff Roode, he was asked by
the defendant's counsel this question.    "At the time the
writing was made (being the warranty in question) I
will ask you to state to the jury whether or not Watson
didn't tell you that the horse was not registered in the Stud
Book of England?"    The plaintiff's objection to the
witness answering the question was sustained and the
answer was not taken.    This ruling of the court is now
assigned for error.    The testimony sought to be elicited, had
it been received, would have contradicted and varied the
written agreement of the parties.    It is too well estab-
lished to require the citation of authorities, that parol testi-
mony cannot be received to contradict or vary a written
contract.    It is claimed by the defendant that the purpose
of this testimony was to show that the defendant had
knowledge that the horse was not registered, and that the
defendant could not have relied upon the statement in the
warranty that the horse was registered, and therefore no
claim for damages can be based upon the fact that the
horse was unregistered.    While it is true that in a suit on
a breach of warranty against defects in the article sold the
seller may prove that the defects were of such a character
that the purchaser must have known of their existence, or
that the buyer knew of them prior to the sale, for the pur-
pose of showing that the plaintiff did not rely upon the
warranty, yet it does not follow that it is competent to
prove that the seller, during the negotiations leading up to
the sale, made representations to the purchaser directly
contradictory of his written warranty subsequently made.
No case has been cited by counsel for plaintiff in error
holding the doctrine contended for by him in this case, nor
have we been able to find such a case reported in the books.

To permit such testimony to be received would violate the familiar rule of evidence above referred to. There was, therefore, no error in sustaining the plaintiff's objection to the question propounded.

After the defendant had closed his case the plaintiff put in evidence, over the objection of the defendant, what purported to be a copy of a letter written by the plaintiff to the defendant on the 24th day of February, 1886. Among the objections made by the defendant at the time, were that no foundation had been laid for its introduction, and that no notice was served upon the defendant or his attorneys to produce the original. No foundation was laid for the introduction of the copy. It does not appear that the original could not have been produced at the trial, nor was it shown that the paper offered was a correct copy of the original.

Numerous other errors are assigned in the brief of counsel for the plaintiff in error, based upon the rulings of the trial court upon the admission of testimony, which we will not take the time to notice, as many of them are disposed of by what we have said in this opinion, and the other errors are not likely to occur upon a retrial of the case.

Nine assignments in the petition in error are predicated upon the giving of certain instructions to the jury, but as they are not referred to in the brief of plaintiff in error, these assignments are abandoned. The record, however, discloses that no exception was taken to any paragraph of the charge of the court until after the verdict was returned into court. A party cannot wait until after he learns that an unfavorable verdict has been received, and then except to the charge of the court, and assign for error the giving of such instructions. An exception must be taken when the instructions are given, in order to have the same considered by the reviewing court.

The defendant requested twelve instructions to be given

18

to the jury, all of which were refused. These requests are quite lengthy and it is not deemed important that they should all be copied into the opinion. The first and twelfth requests correctly stated the rule, that the burden of proof was upon the plaintiff. The substance of these requests is contained in the third paragraph of the charge given by the court on its own motion, and no error was committed in refusing them.

The second request is as follows:

"The court instructs the jury that if they believe from the evidence, that the plaintiff Orange A. Roode is a person of bad reputation for truth and veracity in the neighborhood where he resides, then, as a matter of law, this fact tends to discredit his testimony, and the jury may entirely disregard it, except in so far as he is corroborated by other credible testimony, or by facts and circumstances proved on the trial."

The defendant introduced several witnesses who testified that the plaintiff's reputation for truth and veracity in the neighborhood where he lived was bad. In view of this testimony the jury should have been told what weight should be given to the plaintiff's testimony. The request contained a correct statement of the law, and as it was not covered by the instructions given it was error to refuse it.

The substance of the third request is that the warranty made by the defendant on the 27th day of April, 1885, after the contract of sale was concluded, being without consideration, is not binding on the defendant. There is in the record no testimony tending to show that a warranty was made on that date. Doubtless the defendant meant Exhibit B, that was made on April 24. As heretofore stated, this exhibit was in no way relied upon as a warranty, or made the foundation of the action, and the request was not applicable to the testimony.

Request No. 4 was rightly refused. It, in effect, stated that if the horse was capable of producing a single foal,

then there was no breach of the warranty upon that point. The defendant was not entitled to so favorable an instruction.

The defendant's fifth prayer reads "That although the defendant warranted in writing the stallion 'Knight of the Shires' to be registered in the Stud Book of England, also his dam as well as sire, and that defendant would furnish the secretary's receipt for such pedigree, still if the jury further believe from the evidence that at said time the defendant informed plaintiff that said horse was not registered, but simply eligible to registry, and that said plaintiff knew that said horse was not registered and did not rely on said warranty in making his purchase of the said horse, the plaintiff could not recover for a breach of said warranty, as in law it would be no warranty unless the plaintiff relied upon it in making the purchase." No testimony was given that the defendant informed the plaintiff that the horse was not registered. Such testimony was excluded, and, we think, rightly so.

The sixth and ninth instructions refused stated, in substance, that defects or blemishes which are known to the purchaser must be expressly warranted against to make the seller liable for such defects. We find no fault with the statement of the law in these instructions. The plaintiff did not seek to recover for defects that were visible at the time of the purchase, and that were not expressly covered by the terms of the warranty. The plaintiff claimed damages because the horse was unregistered, and on account of the injury which the horse had received prior to the sale. Both of these matters were expressly covered by the warranty. The eleventh request covers the question of reliance by the purchaser upon the warranty. It is as follows:

"11. The court further instructs the jury, to entitle the plaintiff to recover in the suit, it is not only necessary for the jury to find from the evidence that the plaintiff war-

ranted the animal in question, as alleged in the petition, but it must further appear from the evidence that the plaintiff relied upon said warranty in making the purchase of the horse, and was induced to make said purchase by said warranty; and it must also appear from the evidence that the horse was not as warranted at the time of the sale; and unless all of these facts appear from the evidence, the jury should find for the defendant."

The law undoubtedly is, and has so been declared by this court, that the purchaser of personal property must have relied upon the statements of the seller as to the quality of the article sold in order to make the representations a warranty. (*Little v. Woodworth*, 8 Neb., 281; *Halliday v. Briggs*, 15 Id., 219.) This instruction stated the law correctly, and not being covered by any of the instructions given should not have been refused.

For the errors pointed out the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.