### W. T. NORRIS ET AL. v. W. H. PARKER.

Delivered December 5, 1896.

**1. Warranty in Sale of Chattel—Patent Defects.**

A special warranty in the sale of an animal will cover obvious as well as latent defects, where it does not appear that the purchaser relied upon his own judgment, and especially where the defect was such that its full scope and effect was not then determinable.

**2. Same—Ignorance of Vendor Immaterial.**

It is not necessary for the vendor of an animal to know that it is unsound in order to render him liable on a warranty of soundness.

APPEAL from the County Court of Red River. Tried below before Hon. GEORGE T. BURDETT.

*Lennox & Lennox,* for appellants.—1. A special warranty upon the sale of an animal may be made to cover the effect and consequences that may arise from any patent condition, blemish or defect of the same, if the intention to do so is clearly manifested and was part of the inducement for the purchasers to make the trade, and pay the amount of the purchase price therefor. Williams v. Ingrams, 21 Texas, 300; Henderson v. Railway, 17 Texas, 580; Benjamin on Sales, 627, 629, sec. 8; 28 Am. & Eng. Ency. Law, 745; Hobart v. Young, 12 Law. Rep. Ann., 694; Fitzgerald v. Evans (Minn.), 52 N. W. Rep., 143; Watson v. Roods (Neb.), 46 N. W. Rep., 491; Powell v. Chittick, 56 N. W. Rep., 652.

2. The liability of the vendor of an animal for a breach of warranty of soundness or its foal-getting qualities does not depend upon his knowledge of the defects at the time of sale. If he undertakes to protect the vendee by such a contract and it is part of the inducement for the purchase and afterwards proves untrue, it is a breach of warranty, no matter how innocently the representations were made or honestly believed. Loper v. Robinson, 54 Texas, 511; McKinnon v. McIntosh, 98 N. Car., 89; Bedford v. Megebben, 13 S. W. Rep., 1082; Joy v. Bitzler, 3 Law Rep. Ann., 184.

*Sims & Chambers* and *W. W. Johnson,* for appellee.—1. The court did not err in charging the jury that the defendant would be bound to observe all patent conditions and defects in the jack at the time they

bought him.    Wade v. DeWitt, 20  Texas, 400;  Wood  v.  Ross, 26 S.
W. Rep., 148;  McCormack v. Kelley, 28 Minn., 153.

2.    The court did not err  in  his  charge  to the jury,  "If there were
any latent defects in the animal, known to plaintiff and of  such a char-
acter as to render said jack worthless, and he failed to disclose them, it.
would be a breach of warranty, if he made a warranty."  This was only
a general warranty of soundness, and  it was  in writing.    Williams v.
Ingram, 21  Texas, 300;  McCormack  v.  Kelley, 28 Minn., 135-138;
Marshall v. Drawhorn, 27 Ga., 275;  Van Shoick v. Ins. Co., 68 N. Y.
434;  Bennett v. Buchan, 76 N. Y., 386.

FINLEY, ASSOCIATE JUSTICE.—Appellants' general statement of the
nature and result  of  the suit is accepted  by appellee as being  correct,
and is as follows:    On  March 17, 1894, W. H. Parker, of Clarksville,
Texas, sold and delivered to W. T. Norris and G. B. Dean, at Detroit,
Texas, a fine Spanish jack for breeding purposes, and received  in  pay-
ment therefor the sum of $400 cash, and  their promissory note for the
sum of $400, due and payable to his order on November 15, 1894.    At
the time of sale all the hair had  been  smoothly clipped off  said jack.
On that evening and the  next  morning  thereafter, the animal showed
symptons of being unwell and gradually grew worse until it died, on the
tenth day following.    In consequence thereof the defendants refused to
pay the note therefor when it matured.

On January 7, 1895, the payee, W. H. Parker, instituted this suit in
the County Court of Red River County, Texas, to enforce the collection
of the same.

On January 30, 1895, the defendants filed their  first  amended orig-
inal answer, and  under  oath, specially  set  up and alleged, by way of
cross-bill and plea in reconvention, that they purchased the jack from
plaintiff under a warranty that it was  perfectly sound  in  every partic-
ular, a vigorous and  sure foal-getter, and  that the shearing would  not
injure its health, but be the very life of same.    That they relied on the
warranties, and that they were a part of the inducements for making
the purchase and paying the price therefor.    That it was unsound at
the time of the  sale, and wholly unable to perform  the services of  a
breeder, without any fault on their part.    They further alleged that if
it were not diseased at the time of the sale as before stated, its death
was occasioned from  the effects of  a disease brought on  by reason of
said shearing and that the consideration in said note by reason thereof
had wholly failed, and  prayed for cancellation of same, and  judgment
over against plaintiff for the sum of $415.

The foregoing statement, while not setting forth all the allegations
in defendants' answer, we  think  is sufficient  to show the grounds of
their defense.

On January 30, 1895, plaintiff filed his  first supplemental petition,
which consisted of a general demurrer and a general denial.

On January 23, 1896, the case was tried before a jury, and the same.

resulted in a verdict and judgment for plaintiff in the sum of $513.35, from which judgment this appeal is prosecuted.

The issues upon the trial were "whether the plaintiff at the time of the sale, warranted the jack to be sound and a sure foal-getter, and that the clipping would not hurt it," and whether the warranty had failed. There was a conflict in the evidence between the testimony of the plaintiff and of the defendants. The court charged the jury as follows:

"Where a person sells an animal and warrants it to be sound at the time of such sale, he is bound by his warranty to the vendee.

"I therefore charge you, that if you believe from the evidence that plaintiff sold the jack to the defendants at the time alleged, and warranted it to be sound; and if you should believe from the evidence that at the time of such sale said jack was unsound, not a sure foal-getter, and not as warranted to be by the plaintiff (if plaintiff did give warranty), you will find for defendants on their cross-bill for the sum of $415, and interest to date from March 17, 1894, and also find that the note for $400 sued on in this suit is without consideration; but if you should believe from the evidence that said jack was sound at the time of sale, and a good breeder as represented by plaintiff to defendants, you will find for plaintiff for amount of note sued on, interest and attorney's fees as prayed for, against the defendants on their cross-bills.

"I further charge you that defendants would be bound to observe all patent conditions and defects in the jack at the time they bought him, and if there were any latent defects in the animal known to plaintiff and of such a character as to render said jack worthless, and he failed to disclose them, it would be a breach of his warranty (if he made a warranty), and you will find for defendants as above stated."

Appellant's counsel requested of the court the following charge which was refused: "If you believe from the evidence that at the time said animal was sold to defendants, its hair was clipped off, and if you further believe from the evidence that plaintiff guaranteed that the shearing would be the very making of such animal, and that such warranty was part of the inducement for defendants to complete the contract of sale and execute the note sued on; and if you further believe from the evidence that said shearing was the proximate cause of the death of said animal, and that defendants exercised ordinary care to prevent the death of said animal as heretofore explained, you will return a verdict for defendants."

Appellants complain at the charge of the court, and the refusal fo their special charge asked. We are of the opinion that the charge of the court is objectionable, and that the substance of the special charge should have been given. Appellants alleged an express warranty that the animal was sound, that it was a sure foal-getter, and that it would not suffer injury from having been sheared. The court instructed the jury, in effect, that notwithstanding such express warranty, the purchasers must take notice of the patent conditions and defects, and that

the vendor would not be responsible for latent or hidden defects unknown to him.

The jury may have understood by this charge that the purchasers must take notice that the animal had been sheared; and if there were any evil effects of such shearing unknown to the vendor that he would not be liable on his express warranty, even though they should believe that the shearing of the animal caused its death.

This is the very reverse of the law of the case. If the vendor warranted to the purchasers that the shearing would not damage the animal, and the shearing did produce its death, then the warranty was broken, and the purchasers could not be held liable for the purchase price of the animal. It is true, that, ordinarily, a general warranty in the sale of chattels does not cover defects which are plain and obvious to the purchaser, or which are at the time known to him; but where there is an express and special warranty, the warrantor is bound by the terms of his contract of warranty.

"It is sometimes stated without qualification that an express warranty does not cover patent defects, unless expressly included and referred to. But while this may be true, so far as to raise the presumption that the purchaser was aware of the patent defects, and therefore did not rely upon the warranty for protection against defects of whose existence he was already aware, yet that presumption cannot be held to be conclusive, and wherever it can be shown that the buyer relied absolutely upon his warranty, and made no attempt to exercise his own judgment in the determination of the value and quality of the goods, the warranty will cover obvious, as well as hidden defects.

"But, in order that in any case the obviousness of the defect may exclude it from the operation of the express warranty, it must be so patent that an ordinary purchaser may discover it, and that no special skill or knowledge is required for its detection. And not only must the defect itself be discoverable, but its full and complete scope and effect. If the patent defect does not at the time of sale appear to be very serious, and it develops into a more serious trouble, the express warranty of soundness will be broken thereby. And the fact that the consequences of the defect cannot be reliably determined in advance, is in itself evidence of an intention of the buyer to rely upon the warranty for protection against the possible consequences of the defect. If the seller throws the purchaser off his guard by his representations or actions, or in any other way conceals the defects, they will, of course, so far as that purchaser is concerned, cease to be patent defects and will be included in the warranty.

"It hardly needs to be stated that an express warranty may be so constructed as to include every obvious as well as latent defect; and that the present inquiry is simply into the presumption of law, when the language of the warranty is general, and contains no specific or necessary reference to the obvious defects." Tiedeman on Sales, sec. 195.

In Benjamin on Sales, it is said: "There seems to be no good reason

why a warranty may not cover obvious defects as well as others, if the vendor is willing to give it and the buyer is willing to buy defective property on the assurance of the warranty. If he relies on his own judgment alone, he does not rely on his warranty.    *   *   *"

"A special warranty on the sale of a horse may be made to cover blemishes or defects which are open and visible, if the intention to do so is clearly manifested," is the language of the Supreme Court of Minnesota in the case of Fitzgerald v. Evans, 52 N. W. Rep., 143.

In Watson v. Roode, 46 N. W. Rep., 491, it is said: "A vendor is liable for patent defects in personal property sold when it is so stipulated in the warranty." See also, Henderson v. Railway, 17 Texas, 580; Hobart v. Young, 12 Law. Rep. Ann., 694 (n); Powell v. Chittick, 56 N. W. Rep., 652; Williams v. Ingraham, 21 Texas, 300.

The same portion of the charge of the court above quoted is made the basis of another assignment of error, and complaint is leveled at that particular portion of the charge which says, "if there were any latent defects in the animal known to plaintiff, and of such a nature as to render said jack worthless, and if he failed to disclose them, it would be a breach of his warranty, if he made a warranty."

The proposition urged by appellants is, that if plaintiff made an express warranty that the animal was sound and a sure foal-getter, he was bound by the terms of the warranty, and would not be relieved by the fact that he honestly believed the animal to be sound and a sure foal-getter.

On this phase of the case appellants asked the following special charge: "You are instructed that it is not necessary for the vendor of an animal to know that the same is unsound or not a sure foal-getter, in order to make him liable on a warranty of soundness or that the same was a sure foal-getter. If you believe from the evidence that the plaintiff warranted the said animal for which the note sued on was executed, to be sound and a sure foal-getter, and you further believe from the evidence that the said plaintiff honestly believed said animal was sound and a sure foal-getter at the time of said warranty, but if you further believe from the evidence that said animal was unsound and not a sure foal-getter, you will find for defendants, although you may believe that plaintiff honestly believed said warranties to be true at the time they were made."

The special charge presented the law, and should have been given. It is unnecessary to discuss the other assignments of error and the propositions urged thereunder. The principles of law applicable to the two phases of the case, that of express general warranty and express special or specific warranty, have already been stated. Upon another trial the court should present the two phases of the case as made by the respective parties, and announce the principles of law applicable to each, as laid down in this opinion.

On account of the errors pointed out, the judgment is reversed and the cause remanded.                    *Reversed and remanded.*