**SEALE v. SCHULTZ.   (No. 556.) ***

Court of Civil Appeals of Texas.   Waco.
Oct. 6, 1927.

Rehearing Denied Nov. 10, 1927.

1. Sales ⬤⟶435(3)—Buyer's answer held to plead express warranty that hogs were sound, and, in alternative, that there was an implied warranty.

Buyer's answer in suit on check given in payment for shipment of hogs *held* to plead an express warranty that hogs were well and sound, and in alternative in case evidence failed to establish express warranty, then that there was an implied warranty, and facts alleged as basis for implied warranty were sufficient.

2. Pleading ⬤⟶20—Buyer could plead express warranty, and in alternative that there was implied warranty.

In suit on check given in payment for shipment of hogs, it was permissible for defendant to plead express warranty of hogs, and, in alternative, that there was an implied warranty.

3. Sales ⬤⟶274—There may be implied warranty of food products, though they were not intended for buyer's consumption.

There may be an implied warranty of food products, even though they were not intended for consumption by buyer.

4. Sales ⬤⟶270—Implied warranty could arise though buyer made casual inspection of hogs or had opportunity to inspect same.

There could be an implied warranty· that hogs were well and sound, even though buyer made casual inspection of hogs, or had opportunity to inspect same.

5. Sales ⬤⟶260—If seller warranted hogs to be sound and well, he was bound by express warranty whether he knew of existence of defects or not.

If seller warranted hogs to be sound and well, he was bound by such express warranty, and it was immaterial whether he knew of existence of defects or not, since where there is express warranty by seller of animals or chattels sold, such warranty becomes part of contract, and warrantor is bound by his contract of warranty whether defects are latent or patent, and whether seller knew of defects or not.

6. Evidence   ⬤⟶317(2)—Witnesses ⬤⟶390—Hearsay evidence was not admissible for purpose of impeachment nor to prove declarations against interest.

Hearsay evidence regarding what party jointly interested with defendant in certain purchases had said to witness regarding what defendant had said to him about hog pens being infected with cholera prior to defendant's purchase of hogs from plaintiff *held* inadmissible for purpose of impeachment, or to prove declarations against interest.

7. Trial ⬤⟶350(4)—Where defendant pleaded express warranty by seller regarding hogs, refusal to submit issue whether seller knew hogs were infected held not error.

In suit on check given in payment for shipment of hogs, in which defendant pleaded express warranty by seller that hogs were sound and well, refusal to submit issue whether seller knew at time of sale that hogs were infected with hog cholera, or other contagious disease, *held* not error, since it was immaterial.

8. Trial ⬤⟶350(1)—Charge presenting immaterial issue is properly refused.

Charge presenting an immaterial issue is properly refused by court.

9. Sales ⬤⟶257—Seller's express warranty that hogs were sound and well was based on sufficient consideration and was part of contract.

Seller's express warranty that hogs sold were sound and well was contractual, based on sufficient consideration, purchase of hogs, and was part of contract.

10. Sales ⬤⟶260—Sale of hogs being sale of personal property, it was immaterial whether express warranty was in writing, or rested in parol.

Sale of hogs being sale of personal property, it was immaterial whether express warranty that hogs were sound and well was in writing or rested in parol.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed.

11. Trial ⊕⊃350(4)—Where buyer claimed damages for breach of express warranty, refusal to submit issues whether buyer relied upon seller's representations and whether he relied upon his agent's inspection held not error.

In suit on check given in payment of shipment of hogs, in which defendant alleged that seller had made express warranty that hogs were sound and well and filed cross-bill for breach of warranty, refusal to submit special issues whether defendant relied solely upon plaintiff's representations regarding soundness, and health of hogs, and whether defendant relied solely upon inspection and judgment of his agent, *held* not error, since plaintiff, having obligated himself by terms of valid contract upon sufficient consideration that hogs were sound and well, such issues were immaterial.

12. Sales ⊕⊃262—Buyer who examines article and relies on his own judgment may also protect himself by taking warranty.

Buyer who examines an article himself and relies on his own judgment may at same time protect himself by taking a warranty.

13. Judgment ⊕⊃256(2)—In suit on check for hogs in which defendant claimed damages for breach of warranty, where jury stated defendant's liability as no damages, and that he was not to pay check, court properly refused to enter judgment for amount of check and amount defendant realized from sale of some hogs.

In suit on check given for payment of shipment of hogs in which defendant filed cross-bill for damages for breach of warranty that hogs were sound and well, and in which jury, in answer to question what sum of money would compensate defendant for damages answered "no damages, it being understood S. (the defendant) does not pay check," court did not err in refusing to enter judgment for amount of check sued on, or for amount realized by defendant from sale of 23 hogs which were well, where defendant sustained additional damages from infection of his own hogs by the hogs purchased.

14. Trial ⊕⊃315—Jury should answer special issue without regard to effect of findings on judgment.

The jury should answer special issues as they may find facts to be from evidence, without regard to effect of their findings upon judgment to be rendered.

15. New trial ⊕⊃52—Jury's conduct in determining what kind of judgment they want rendered and then framing answers to special issues accordingly requires reversal.

Jury's conduct in first determining what kind of judgment they want rendered and then framing their answers to special issues, not according to evidence, but so as to result in such judgment, requires reversal.

16. New trial ⊕⊃52—Refusal to grant new trial where jury determined judgment that should be rendered and answered special issues accordingly required reversal.

Court's refusal to grant motion for new trial where jury undertook to determine judgment that should be rendered in cause, and with such end in view, regardless of evidence, answered special issues, was such abuse of discretion as to require reversal.

Appeal from District Court, Robertson County; W. C. Davis, Judge.

Suit by A. H. Seale against Paul Schultz, in which defendant filed cross-bill. From the judgment, plaintiff appeals. Reversed and remanded.

Joe H. Seale, of Centerville, and Bush & Parten, of Franklin, for appellant.

J. L. Goodman and Woods & Tyson, all of Franklin, for appellee.

STANFORD, J. Suit by appellant on a check given by appellee to appellant for $1,-167.40 in payment for a shipment of 112 head of hogs shipped from Marquez, Tex., to New Baden, Tex., alleging fully the purchase of said hogs by appellee, his giving said check in payment therefor, and his failure to pay same. Appellee, after a general demurrer and general denial, alleged, in substance, that he bought said 112 head of hogs and gave said check in payment therefor; that appellant represented and warranted said hogs to be well and sound, and thereby induced him to purchase same and to execute and deliver to appellant said check; that said hogs were not sound and well, as represented and guaranteed by appellant, but were infected with hog cholera when purchased, and that 89 of said hogs died of hog cholera or other infectious and contagious disease, and that said 89 hogs that died were a total loss, and the remaining ones were greatly reduced in value because of their exposure to said disease; that as soon as he learned said hogs were diseased, he tendered same back to appellant, but appellant refused to accept said hogs and return his check, by reason of which the consideration for said check had failed. Appellee also filed a cross-bill, in which he alleged that before he knew that said hogs were infected he mixed same with other hogs he had, and said disease was communicated to said hogs, causing many of them to die; that his losses by reason of said infected hogs, and his expenses in treating said hogs, etc., amounted to far more than the amount of the check sued upon, and appellee sought to recover damages against appellant in the sum of $5,264. In response to special issues the jury found as follows:

"(1) A. H. Seale in selling said hogs to the defendant Paul Schultz did warrant that said hogs were sound and well at the time of the sale and delivery of same.

"(2) Said hogs at the time of the sale and delivery of same by plaintiff to defendant were infected with cholera, or other contagious disease.

"(3) The diseased hogs purchased by defendant from plaintiff did transmit and cause the hogs belonging to the defendant, and his hog

pens and premises at New Baden, Tex., to be infected with cholera or other contagious disease germs.

"(4) What sum of money, if paid now, will fairly and reasonably compensate defendant for the damages, if any, which you may find that he has sustained as a direct and proximate result of infecting the hogs in question, if they were so infected, with cholera or other contagious disease at the time of their purchase by defendant from plaintiff? Answer: No damages, it being understood Mr. Schultz does not pay check for $1,167.40 made to A. H. Seale."

Upon said findings the court entered judgment against appellant upon the check sued upon, and against appellee on his cross-bill for damages, and adjudged all costs against appellant, who has appealed and presents the record here for review.

[1-4] Under appellant's first proposition he contends, in effect, that as appellee's answer alleged that he bought the hogs to be resold on the market for stock and butcher hogs and not for his own consumption, that no implied warranty arose, etc., and that the court erred in overruling his special exception, thereby holding otherwise. Appellee pleaded an express warranty of the hogs, and also that appellee was engaged in buying hogs for the market, and that appellant knew that he bought these hogs for the purpose of placing them on the market, and that appellant knew that unless the hogs were sound and well they would be unfit for appellee's purpose, etc. We construe said pleading to plead an express warranty, and, in the alternative, in case the evidence fails to establish an express warranty, then that there was an implied warranty. This, we think, was permissible and proper, and we think the facts alleged as the basis for such implied warranty were sufficient. We do not think it is true that there can be no implied warranty of food products unless same are intended for consumption by the purchaser. Neither do we think that because appellee made a casual inspection of said hogs or had an opportunity to inspect same that an implied warranty could in no event arise. Needham v. Dial, 4 Tex. Civ. App. 141, 23 S. W. 240; Fairbank Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372, 16 Am. St. Rep. 753, and authorities cited in note. At any rate, no error is shown here, in that the question of implied warranty was not submitted to the jury and in no way affected the recovery.

[5] Under his second assignment appellant contends that appellee's answer was subject to special exception, because it failed to aver that alleged latent defects in said hogs were known to appellant. If appellant warranted the hogs to be sound and well, he was bound by such express warranty, and it was immaterial whether he knew of the existence of defects or not. Where there is an express warranty by the vendor of the animals of chattels sold, such warranty becomes a part of the contract, and the warrantor is bound by the terms of his contract of warranty, whether the defects are latent or patent, and whether the vendor knew of such defects or not. Norris et al. v. Parker, 15 Tex. Civ. App. 117, 38 S. W. 259; Sanders v. Britton (Tex. Civ. App.) 47 S. W. 550; Spivey v. Gee (Mo. App.) 200 S. W. 726; Fitzgerald v. Evans, 49 Minn. 541, 52 N. W. 143; Watson v. Roode, 30 Neb. 264, 46 N. W. 491; Carter v. Cole (Tex. Civ. App.) 42 S. W. 369; 24 R. C. L. 153; 35 Cyc. p. 378, and cases cited. We overrule this assignment.

[6] Under his fifth assignment appellant complains of the refusal of the court to permit the witness Ryan to testify to certain statements which he said Luther Taylor had made to him as to what appellee, Paul Schultz, had said to him, Taylor, about his hog pens being infected with cholera prior to his purchase of the hogs from appellant. The record shows that appellee and Luther Taylor were jointly interested in some hogs purchased by Taylor. There was no general partnership, but they were jointly interested only in certain purchases made by Taylor. Taylor was not interested in the hogs purchased from appellant. If Taylor had been produced and offered testimony as to what appellee said to him in reference to prior infection of his pens, such evidence would have been admissible as a statement against interest, or for impeachment if the proper predicate had been laid, but to permit Ryan to detail statements which he said Taylor told him appellee had made would clearly be to admit hearsay evidence. Hearsay evidence is not admissible for the purpose of impeachment nor to prove declarations against interest. Austin Elec. Ry. Co. v. Faust, 63 Tex. Civ. App. 91, 133 S. W. 449; McKelvy on Ev. (2d Ed.) p. 123. There is no merit in this assignment, and it is overruled.

[7,8] Under other assignments appellant contends the court erred in refusing to give in charge to the jury his requested special issues 1, 2, and 3, as follows:

"(1) Did the defendant, acting by and through his agent, W. O. McNutt, rely solely upon the representations of the plaintiff, if he made any representations, as to the soundness and health of said hogs?

"(2) Did the defendant, Paul Schultz, in purchasing said hogs, rely solely upon the inspection and judgment of his agent, W. O. McNutt, as to the soundness and health of said hogs?

"(3) Did the plaintiff know at the time of the sale of the said hogs to the defendant that they, or any of them, were infected with hog cholera or swine plague or any other contagious disease?"

[9-12] In response to the first issue the jury found that appellant, in selling said hogs to appellee, did warrant that said hogs were sound and well at the time of the sale and delivery, and in response to the second issue they found that at the time of the sale and

delivery said hogs were infected with cholera or other contagious disease. Appellee having pleaded said express warranty by appellant, it was wholly immaterial, as above shown, whether or not appellant knew said hogs were diseased at the time he made said warranty, and appellant's third special charge, if given, would have presented an immaterial issue, and so was properly refused by the court. The record discloses that McNutt as appellee's agent looked over the hogs and made no objection except there were not as many butcher hogs as they wanted, and that the said agent consummated the purchase and delivery, at which time there was no outward or visible appearance of disease in said hogs, but about the next day they began to die of cholera, or other contagious disease. It will be observed by the first special issue requested by appellant the jury was asked to find whether appellee relied solely upon the representations of appellant as to the soundness of said hogs, and by the second requested issue they were asked to find whether appellee relied solely upon the inspection and judgment of his agent, W. O. McNutt. If the relief sought by appellee had been to rescind the contract of purchase based upon fraud or deceit, then it would have been necessary to allege and prove not only that appellant represented said hogs to be sound and well, and that said representations were false, but also that appellee relied upon said false representations and was thereby misled and deceived, and thereby induced to make such purchase. But such is not the case here. The relief sought by appellee was based upon the breach of an express warranty by appellant that said hogs were sound and well. Such warranty was contractual, based upon a sufficient consideration—the purchase of said hogs—and was a part of said contract. And, we think, this being the sale of personal property and not real estate, it is immaterial whether said express warranty was in writing or rested in parol. Appellant having obligated himself by the terms of a valid and legal contract upon a sufficient consideration that said hogs were sound and well, it was immaterial whether or not appellant knew of such defects, and immaterial whether or not such defects were latent and could not be known by him, and was also immaterial whether or not appellee examined said hogs, and knew their condition and relied upon his examination or upon such express warranty, or both. We think the rights of the parties were fixed and should be determined solely by the terms of the contract of express warranty. We realize there is much confusion in the decisions of appellate courts on the question here involved, but we think the better and most logical rule is as announced by Ruling Case Law, vol. 24, § 425, as follows:

"Where misrepresentations by the seller are made the basis of a charge of fraud, it is ordinarily necessary that the buyer should have relied on the representations, but one who examines an article himself and relies on his own judgment, may at the same time protect himself by taking a warranty." C. A. Bryant Co. v. Hamlin School Dist. (Tex. Civ. App.) 274 S. W. 266 (writ dismissed); Smith v. Hale, 158 Mass. 178, 33 N. E. 493, 35 A. L. R. 485; 24 R. C. L. p. 154, § 425; 35 Cyc. p. 378; Stuckey v. Clyburn, Cheeves 186, 34 Am. Dec. 590; Meickley v. Parsons, 66 Iowa, 63, 23 N. W. 265, 55 Am. Rep. 261, and note; Miller v. Moore, 83 Ga. 684, 10 S. E. 360, 6 L. R. A. 374, 20 Am. St. Rep. 329, and note; Woods v. Thompson, 114 Mo. App. 38, 88 S. W. 1126; Shordan v. Kyler, 87 Ind. 38; McCarty v. Williams, 58 Ind. App. 440, 108 N. E. 370.

The court was correct, in view of the fact the charge authorized a recovery only upon the ground of an express warranty, in refusing to give appellant's specially requested issues 1, 2, and 3. These assignments are overruled.

[13] Under other assignments appellant contends the court erred in refusing to render judgment for him for $1,167.40, the amount of the check sued upon; and under another assignment contends the court should have rendered judgment for him in any event for $289.62, the amount as shown by the evidence that appellee received for 23 head of the hogs purchased from him; and under other assignments appellant contends the jury were guilty of misconduct, in that they first discussed and agreed that neither party was entitled to recover anything against the other, and then proceeded to answer the special issues so as to effectuate such result. We will consider the above assignments together. As above stated, appellant sued upon a check for $1,167.40, the purchase price of 112 head of hogs. Appellee, to defeat recovery on said check, pleaded failure of consideration, in that appellant warranted said hogs to be sound and well, and alleged that said hogs were when purchased infected with cholera and that 89 head died of said disease, and the others, by reason of said disease, were of little value, etc. Appellee also filed a cross-bill alleging, in substance, that by reason of the breach of appellant's warranty he had suffered damages on the hogs purchased from appellant in the sum of $1,167.40, and, further, that he had placed said hogs in his pens with his other hogs, not knowing they were diseased, and many of his other hogs were made sick and died, to his damage in the sum of $515.47; that the reasonable and necessary expense of treating all of said hogs was $449.99; that the expense of disinfecting his pens was $500; that by reason of his pens being infected he was compelled to suspend his business of buying and selling hogs for six months, resulting in his further damage of $3,000—for all of which items of damages he sought judgment against appellant. In connection with the fourth special issue the court gave the jury appropriate instructions submitting the items of damages set out in appellee's cross-bill, to which the jury

answered: "No damages; it being understood Mr. Schultz does not pay check of $1,-167.40 made to A. H. Seale." Of course, if appellant did warrant said hogs to be sound and well at the time sold, and if, in fact, they were at said time diseased, as found by the jury, still if appellee suffered no damages by reason of said breach of warranty, appellant would be entitled to judgment for the amount of the check sued upon; but the record discloses without any contradiction that 89 of the hogs bought from appellant died, and that appellee sold 23, realizing therefor only $289.62. The jury also found, in answer to the third issue, that said diseased hogs transmitted and caused the other hogs of appellee and his hog pens and premises at New Baden, Tex., to be infected with cholera or other contagious disease germs, and the record is without dispute that some 25 of appellee's other hogs died of said disease. We think, also, that the fact the jury added to their answer to the fourth issue the clause, "it being understood Mr. Schultz does not pay the check of $1,167.40 made to A. H. Seale," which was not in response to said issue, is almost conclusive the jury had agreed that neither party should recover anything of the other and that appellee had in fact sustained damages sufficient to offset the check sued upon and the $289.62, the amount appellee had realized out of the 23 head sold. We think there was no error in the court's refusal to enter judgment for the amount of the check sued upon; neither was there error in his refusal to enter judgment for appellant for the $289.62 realized by appellee from the sale of 23 of the hogs purchased from appellant. As to the alleged misconduct of the jury, made one of the grounds of appellant's motion for a new trial, the court heard evidence, and the witness W. L. Kay, foreman of the jury, testified:

"The idea with the majority of them, or practically all of the jury, was to kinda make a dogfall of it and split the loss with each one as near as possible. We decided that and answered our issues in line with that decision. We decided we wanted to make a dogfall of it and answered our issues so that the final result of the suit would make a dogfall. * * * Our discussion all the way through in the jury room was to make the recovery of one offset the recovery of the other. I believe that is what controlled our findings. If we had not done that I don't believe we would ever have reached a verdict at all. I think that is what controlled the answer to the question. The jury did not consider that he (Schultz) was damaged by reason of the disease breaking out there among his hogs more than offset any benefit that he may have got out of the hogs he bought, and that was the reason that notation was put there in order to make an offset of this 'no damage,' against the check. * * * After

we discussed it was to be a dogfall and neither side was to make recovery, we did not then go back and answer issues Nos. 1, 2, 3, and 4 in line with what we wanted the final judgment to be; we discussed the whole thing before we came to a conclusion about what we wanted to do and what all would be willing to do. We tried to answer the issues in line with that agreement."

[14-16] According to the testimony of this witness, who was the foreman, the jury first determined the effect upon the judgment of their answers, and then answered the issues so that neither party would recover anything against the other. None of the other jurors were called to testify. The evidence of the foreman is in no way contradicted, but, we think, his evidence is strongly corroborated by their answer to the fourth special issue. A jury should answer special issues as they may find the facts to be from the evidence, without regard to the effect of their findings upon the judgment to be rendered. The prime object in submitting a cause to a jury upon special issues is that they should be relieved of any bias or prejudice in favor of or against either party, and that they should answer each question truly as they find the facts to be from the evidence. Clearly, we think, this was not done in this case. For a jury to first determine what kind of a judgment they want rendered, and then to frame their answers, not according to the evidence, but so as to result in such judgment, is such misconduct, we think, as requires a reversal. Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941; Harvey v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 261 S. W. 197; G. C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895. We recognize the rule that the trial court's judgment in cases of this kind can be reversed only where it is manifest to the appellate court that the trial court abused its discretion in refusing to grant a motion for new trial. Debes v. Greenstone (Tex. Civ. App.) 260 S. W. 213, and cases cited. But we think the uncontradicted evidence of the foreman of the jury, in connection with the fourth special issue and the answer of the jury thereto, shows conclusively that the jury undertook to determine the judgment that should be rendered in said cause, and with such end in view, regardless of the evidence, answered said issues, and especially issue No. 4, and, this being true, we think the trial court should have granted appellant's motion for new trial upon the ground here assigned, and the refusal of the court to so do was such abuse of his discretion as to require a reversal. We sustain this assignment.

The judgment of the trial court is reversed and the cause remanded.