**BERRY et ux. v. LOWERY et al.**

No. 14760.

Court of Civil Appeals of Texas.
Dallas.

Feb. 5, 1954.

Rehearing Denied March 12, 1954.

Chaney & Davenport and Fred Harless, Dallas, for appellants.

Thompson, Knight, Wright & Simmons, Pinkney, Grissom and R. T. Bailey, Dallas, for appellees.

YOUNG, Justice.

The suit was for personal injuries to Bobbie Jean Jackson, a girl aged 3, filed by Nathaniel Berry and wife Corine Berry, in their own behalf and as next friend for the child against John Welsey Lowery and United Insurance Company, defendants; said injuries having been sustained when run into and over by an automobile driven by Lowery, an agent of the Insurance Company. Plaintiffs (appellants here) sued under an assignment of rights from the natural parents of Bobbie Jean. Upon jury trial and answers to special issues, defendants' motion for judgment was sustained with rendition in accordance. This appeal has followed in due course.

The fact issues for jury consideration are reflected in their answers, here summarized: (1) That defendant Lowery failed to keep a proper lookout for Bobbie Jean Jackson at the time and on the occasion in question, which was a proximate cause of the collision; (2) at which time Lowery was not driving his automobile at a greater rate of speed than was reasonable under the circumstances; (3) nor was he driving in excess of 30 miles per hour; (4) the Berrys (Nathaniel and Corine) allowed Bobbie Jean to go into Crockett Street at the time of injury, which was negligence and a proximate cause thereof; (5) but not the sole proximate cause; (6) George and Bobbie Lee Jackson (natural parents) did not allow the child to go into Crockett Street at the time; (7) the collision was not the result of an unavoidable accident; (8) the jury answered "None" to each of the following issues: No. 16, "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate plaintiff Bobbie Jean Jackson for her diminished capacity, if any, to work and earn money after she has reached

the age of 21 years, if you find from a preponderance of the evidence that there will be any such diminished capacity to work and earn money after she has reached the age of 21 years; for her disfigurement, if any, and for her physical pain, if any, and mental suffering, if any in the past, if you find from a preponderance of the evidence that there has been any in the past, and her physical pain, if any, and mental suffering, if any, in the future, if you find from a preponderance of the evidence that there will be any in the future, resulting directly and proximately from the injuries sustained by her on the occasion in question?" No. 17: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the parents, or the persons standing in the place of the parents, of Bobbie Jean Jackson, for the diminished capacity, if any, of Bobbie Jean Jackson to work and earn money until she reaches the age of 21 years, less the reasonable cost of care, education and maintenance of Bobbie Jean Jackson until she reaches the age of 21 years, resulting directly and proximately from the injuries sustained by Bobbie Jean Jackson on the occasion in question?" (9) And to issue 18, that $1,278.85 would compensate the Berrys for reasonable and necessary medical expenses, doctors' and hospital bills incurred directly and proximately as a result of Bobbie Jean's injuries. The court's charge concluded by instructing the jury to return a verdict in favor of United Insurance Company, which defendant was disposed of accordingly.

By agreement, the statement of facts was limited to the damages and injuries sustained by Bobbie Jean Jackson, inclusive of the following: Testimony of Drs. Sellman and Nash and of appellants Nathaniel and Corine Berry; various exhibits; also all testimony of jurors adduced on hearing of plaintiffs' motion for a new trial.

The collision occurred on North Crockett Street, Dallas, on the afternoon of April 29, 1952; Bobbie Jean Jackson receiving head injuries admittedly serious and severe; and exhibits depicting the child's physical condition on reaching the hospital were ghastly sights, to say the least. The injuries sustained were outlined by Dr. Sellman, plastic surgeon, and Dr. Tom Nash, neurosurgeon, in testimony as follows:

(Dr. Sellman) "A. Well, the skin and underlying muscles of tissue had been literally torn away from the left side of the patient's skull, and there were also multiple fractures of the patient's skull underlying this area of injury; and these various segments of muscle, and soft tissue, and skin were fitted back together and sutured in place much as you would put together a jigsaw puzzle. * * *

"Q. And was there any debris or foreign substance in her head at the time you first saw her? A. There was—I remember distinctly there was one rock that measured perhaps a half centimeter in diameter which was actually embedded in the fractured line in the skull. * * *

"Q. And what would be your diagnosis of her type of injury aside from the lacerations? What was the—how would you diagnose her injuries? A. These diagnoses are usually listed in order of their severity so that No. 1 would be a compound comminuted fracture of the skull with exposure of the dura (brain covering). No. 2 would be multiple lacerations and macerations of the left side of the head and the left forehead with a partial evulsion (tearing away) of the left ear."

(Dr. Nash) "A. Well, the scalp on the left side of her head had been severely torn and cut so that the scalp was laid bare over a large portion of the left side of her head. The scalp was torn jaggedly and irregularly in several places. There was a small amount of scalp that seemed to be actually missing. In addition to that she had—her head was deformed. That is, her skull had been broken and I say above and behind her left eye some of the skull had been actually driven in—broken and driven in and there were some rocks and debris, etc., that had been driven into the skull."

Both doctors testified to a temporary paralysis of left eye; permanent deformity (flattening) of skull structure; facial dis-

figurement and scarring due to extensive skin grafts; recurrence of headaches and possibility of future epileptic seizures. The child remained in the hospital until July 4; hospitalization expense, $728.85; doctors' bills, $550; a total of $1,278.85, as found by the jury.

Bobbie Jean Jackson was living with the Berrys at time of injury, they being authorized to bring suit in her behalf under the following assignment executed by the natural parents and placed in evidence by plaintiffs: "In consideration of Nathaniel Berry and wife, Corine Berry, incurring, assuming and paying all medical and hospital bills for Bobbie Jean Jackson, age 3, by reason of injuries sustained by her on April 29, 1952, in the 1800 block of Crockett Street, Dallas, Texas, we hereby assign to the said Nathaniel Berry and wife, Corine Berry, (for) their own proper use and benefit and all sums of money due or owing me, and all claims, demands, and causes of action of whatsoever kind which we have or may have against any person or persons arising from said injuries received by said Bobbie Jean Jackson, age 3, on said date of April 29, 1952, when she was run into and over by an automobile. We further hereby appoint the said Nathaniel Berry and wife, Corine Berry, their executors, administrators, and assigns, our true and lawful attorney, for us and in our name, for their sole use and benefit to use their own name to demand, sue for, collect and release for the said claim or claims or any part thereof."

As first ground for reversal of cause, appellants rely upon Rule 328, T.C.P., providing in part: "New trials may be granted when the damages are manifestly too small or too large, * * *"; answered by appellees in second counter-point that the motion for new trial was correctly overruled "because there was sufficient evidence for the jury to find that the appellants had suffered no damage other than for hospital and doctor bills."

The jury, in response to issue 16 concerning damages suffered by the minor plaintiff herein, returned answer of "None"; and appellees, in argument as strong as possible under the circumstances, seek to demonstrate that said jury answer has support in competent evidence and should therefore be permitted to stand. We conclude, however, that the foregoing resume of medical testimony, without more, presents a classic situation for application of the quoted rule, 328, necessitating a reversal of cause. Clark v. Spurdis, Tex.Civ.App., 258 S.W. 881; Coppedge v. Kreuz, Tex.Civ.App., 2 S.W.2d 362.

Moreover, testimony of jurors had on hearing of motion for new trial conclusively discloses that, with reference to this issue (monetary award to the minor child), they first determined upon a course of action and then proceeded to carry such method into effect without regard to the testimony bearing on the issue in question. In this connection the jurors frankly stated that issue 16 was disposed of by that body on a basis of which the testimony of Juror High was typical:

"Q. Will you please state whether or not anything was said in that connection as to lack of safeguards or the setting up of a trust to see that she got any money that was awarded? A. There was. The jury discussed the lack of a guardian to be appointed and they were of the opinion that if the money was paid to the Berrys, that they would use it as they saw fit and not for the safeguard of the child.

"Q. Was there anything said in that connection about the assignment that was offered in evidence? A. Yes, the assignment was brought into the discussion. That was read over several times and in that assignment it said, the way the jury interpreted the instrument was that the Berrys could use this money as they saw fit.

"Q. Will you please state whether or not any discussion was had then as to the amount of money in view of your belief that the Berrys might spend the money? A. No, there was no discussion because that instrument was the stumbling block in awarding any damages or the discussion of

damages was the fact that the Berrys would profit entirely by the procedure.

"Q. Was there anything said by any of the jurors indicating that Bobbie Jean Jackson had not been injured or hurt? A. No, everybody was in accord with the fact that the child had been injured.

"Q. Was anything said by any of the jurors to indicate that any of them believed that she was not entitled to damages for pain and suffering? A. Yes, there were several jurors made the statement in conjunction with the fact that the child was not protected and that the Berrys would benefit solely by the transaction.

"Q. Was a Cadillac automobile mentioned in that connection? A. It was.

"Q. What was said? A. One juror—I can't recall his name—said that we had no safeguard about Bobbie Jean Jackson, and that the Berrys would be able to purchase a Cadillac if they wanted to, in the face of the instrument that was presented in evidence.

"Q. Did these discussions that you have mentioned have anything to do with the amount of money that you finally put in your answer to Special Issue 16? A. The discussion came up, the jury was divided in regard to any amount of money that would have been awarded, but the majority held out that there was no use of giving the child anything when there was no safeguard to protect the child.

"Q. Then was the answer 'None' to Special Issue No. 16 motivated in the manner in which you have stated? A. That's correct.

"Q. That Bobbie Jean might not get the benefit of it? A. That is correct, yes, sir."

The instrument executed by the parents of Bobbie Jean assigned to appellants "all claims, demands, and causes of action of whatsoever kind which we have or may have against any person or persons arising from said injuries received" by the child; inclusive of appointment of Nathaniel and Corine Berry as "our true and lawful attorney, for us and in our name, for their sole use and benefit to use their own name to demand, sue for, collect and release for the said claim or claims or any part thereof." This assignment was interpreted by the jury to mean that the Berrys could personally appropriate any award under issue 16, with no safeguard concerning its use solely in the interest of the child; the fact of serious injuries suffered by it not being questioned. And bearing on the issue, a verdict of at least $2,000 was generally discussed by the jury.

An assignment so worded should have been offered only for the limited purpose of establishing appellants' right to sue; Art. 1994, Vernon's Ann.Civ.St.; for otherwise it was susceptible of the construction placed thereon by the jury. But in a legal sense and to the contrary, these foster parents would have derived no benefit from any finding of damages under issue 16 (see Footnote 1); the jury on the other hand having been led to an opposite but erroneous conclusion with disposition of issue accordingly, regardless of undisputed testimony. " * * * though the amount of damages is ordinarily left to the discretion of the jury under the evidence before them, yet they cannot ignore the undisputed facts and arbitrarily fix an amount neither authorized nor supported by the evidence. (Citing cases). In the instant case the verdict was manifestly wrong under the evidence, and the court should have granted a new trial. * * *" Coppedge v. Kreuz, 2 S.W.2d 362, 363. "Jury's conduct in first determining what kind of judgment they want rendered and then framing their answers to special issues, not according to evidence, but so as to result in such judgment, requires reversal. Seale v. Schultz, Tex.Civ.App., 3 S.W.2d 563, 564 (syl. 15).

1. Pursuant to Art. 1994, any such recovery, if not exceeding $500, could be withdrawn only under a double bond to be expended "for the benefit of the owner under the direction of the court"; and if more than $500, a guardianship would have afforded even additional safeguards.

█ But appellees argue that appellants cannot complain of inferences logically resulting from evidence offered in their own behalf. While the assignment was a proper instrument for the court's consideration as authority for their right to sue, its contents could have no binding effect on the minor's phase of the action, as to which she is the real plaintiff. "The guardian ad litem * * * cannot waive, or admit away any substantial rights of the infant, or, likewise, relinquish any substantial rights * * * or consent to anything which may be prejudicial to him * * * and any admission or waiver is ineffectual and not binding on the infant, although it is contained in a pleading." 43 C.J.S., Infants, § 111, pp. 303, 304; Moore v. Prince, Tex.Civ.App., 23 S.W. 1113; Wright v. Jones, Tex.Com.App., 52 S.W.2d 247; Greathouse v. Fort Worth & D. C. R. Co., Tex.Com.App., 65 S.W.2d 762.

These settled principles of law are likewise applicable to appellees' first counterpoint urging that appellants, in filing a motion for judgment on the jury verdict, thereby waived any defects in that verdict. See Footnote 2.

█ Our conclusions thus far render unnecessary a discussion of point 3 complaining of improper jury argument on part of defense counsel; Bill No. 1 touching on Mr. Grissom's reference to the court's peremptory instruction as to defendant United Insurance Company; which comment was rendered harmless by reason of the court's sustaining of objection and the jury finding of negligence against defendant, despite the remark made. Upon retrial, the better practice would be to withdraw such matter of law entirely from the jury's consideration by procedure followed in Harvey v. Elder, Tex.Civ.App., 191 S.W.2d 686 writ ref., and Marlin Associates v. Trinity Universal Ins. Co., Tex.Civ. App., 226 S.W.2d 190.

█ Appellants contend under point 5 that they are at least entitled to judgment for amount of doctors' and hospital bills notwithstanding the finding against them of contributory negligence; suggesting a reversal only as to that part of suit brought on behalf of the minor. See in this connection McMillion v. Wilkinson, Tex.Civ. App., 135 S.W.2d 231, relative to the common law duty of parties standing in loco parentis. Piecemeal reversals are not favored. Bolling v. Rodriguez, Tex.Civ.App., 212 S.W.2d 838. As stated in Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522, syl. 3: "Where issues in case were closely related and were indivisible, plaintiffs would not be forced to try case piecemeal, and where submission of special issues to jury as to part of case was erroneous, judgment would be reversed and entire cause would be remanded to trial court." See also Houston Oxygen Co. v. Davis, 139 Tex. 1, 161 S.W.2d 474, 140 A.L.R. 868, and Dallas Ry. & Terminal Co. v. Hendrix, Tex.Civ.App., 261 S.W.2d 610.

The entire cause is accordingly reversed and remanded for a new trial.

## On Motion for Rehearing.

Appellee Lowery forcefully opposes our holding "that the minor plaintiff, through her next friend and attorneys of record, could not waive her right to have a limiting instruction as to the admission into evidence of the assignment from her parents to the Berrys"; and "that the minor plaintiff, through her next friend and attorneys of record, could not waive the defects, if any, in the verdict, by filing a motion for judgment on the verdict." It is argued that, controlling here, is the rule stated in 43 C.J.S., Infants, § 114, p. 312: "An infant client ordinarily is bound by the acts of his counsel who is duly authorized to act

2. Such verdict was returned by the jury in open court on March 21, 1953, appellants herein filing motion for judgment on March 24, viz.: "Now come the plaintiffs in the above entitled and numbered cause and move the court to enter judgment as to all parties in accordance with the findings of the jury in response to the special issues submitted to them in the court's main charge."

and while acting within the limits of his authority."

■ Obviously the assignment in question contained recitals susceptible of a construction prejudicial to the interest of the minor; also that plaintiffs' motion for judgment (shown in footnote) was in effect a request that final judgment be entered against the child. We therefore concluded in original opinion that the further rule stated in 43 C.J.S., Infants, § 114b, p. 312, was applicable to such state of the record: "The authority and powers of the attorney are limited to those possessed by the guardian ad litem or next friend. * * * The attorney cannot waive or admit away any substantial rights of the infant, or consent to anything which may be prejudicial to the infant. However, he may make a valid consent or waiver as to matters which merely facilitate the litigation and cannot prejudicially affect the rights of the infant."

Appellee's principal cases in support of his points, Spotts v. Spotts, 331 Mo. 917, 55 S.W.2d 977, 87 A.L.R. 660, and Byrnes v. Butte Brewing Co., 44 Mont. 328, 119 P. 788, are cited in Annotations to 87 A.L.R., pp. 672, 675, as holding that infants are bound by the same rule as adults. But, as remarked in Haden v. Eaves, 55 N.M. 40, 226 P.2d 457, 459: "A study of these cases shows they lend but little support to such rule." Justice McGhee in the Haden appeal quotes with approval the following from Parken v. Safford, 48 Fla. 290, 37 So. 567 (where the guardian ad litem had failed to properly protect his record) : " 'It must also be borne in mind that one of the defendants was an infant, and therefore "it was the duty of a court of equity to see that the interests of minors are protected in suits before it, whether the claim or defense be properly pleaded or not; and for this purpose the chancellor should look to the record in all its parts, and of his own motion give to the minors the benefit of all objections and exceptions appearing thereon, as if specially pleaded." ' " Relevant here, the New Mexico Supreme Court had this to say: "Here we have a case where the interests of the minor and his father are separable; both have appealed and we see what we believe to be a serious error made in the case against the interests of the minor. We cannot in good conscience sit with folded hands, adopt the attitude of umpires in a contest between adults, apply our ordinary rules of civil procedure and say that because of a mistake of the guardian ad litem in trying the case on an erroneous theory the minor must lose all."

■ Above quotations are in accord with the "relaxed rule" where infant litigants are involved, as discussed in Annotations to 87 A.L.R., p. 675; and our own Courts exercise equal vigilance on behalf of a person non sui juris. "The rights of minors, who in law are not capable of protecting themselves, should receive a more liberal construction and protection than those of adults." Brooke v. Clark, 57 Tex. 105. "The minors are not appealing, and have not cross-assigned on this appeal; but they are by law wards of the court, and it is the duty of the court, as we conceive it, to see that their interests are protected." Eckert v. Stewart, Tex.Civ.App., 207 S.W. 317, 323, writ ref. All matters presented on rehearing, upon consideration, are overruled.

■ United Insurance Company calls attention to the fact that no exception was taken to its dismissal in the trial court, with judgment final as to it. Such party's motion to that effect is sustained; and reversal herein is limited to the issues in controversy between plaintiffs and defendant John Wesley Lowery. Original opinion reformed accordingly.