Eduardo **GALLEGOS** et al., Appellants,

v.

Velsie Foster **CLEGG**, Appellee.

No. 273.

Court of Civil Appeals of Texas.

Corpus Christi.

June 22, 1967.

Rehearing Denied July 20, 1967.

Arthur Lapham, Victoria, for appellants.

M. W. Meredith, Jr., of Keys, Russell, Watson & Seaman, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

This suit was brought by Eduardo Gallegos, individually and as next friend of his six minor children, and by Nick Lamas, individually and as next friend for his minor son, plaintiffs, against Velsie Foster Clegg, defendant, for damages resulting from a collision which occurred in Victoria, Texas, on July 27, 1965, between the automobile driven by Nick Lamas in which all the minor plaintiffs were riding, and a school bus driven by the defendant. Eduardo Gallegos was not present or involved in the collision.

The findings of the jury material to this appeal are in substance as follows: That the defendant failed to keep a proper lookout on the occasion in question which was a proximate cause of the collision; that the plaintiff, Nick Lamas, failed to keep a proper lookout and to make proper application of the brakes on the automobile he was driving, and each such failure was a proximate cause, but not the sole proximate cause of the collision. In answer to special issue No. 18, inquiring concerning damages for physical pain in the past and future suffered by the seven minor plaintiffs, the jury answered nothing in each instance. In answer to special issue No. 19, inquiring concerning compensation to Eduardo Gallegos and Nick Lamas for reasonable and necessary medical expenses in the past and future for "injuries, if any, suffered by the minor plaintiffs as a direct and proximate cause of the collision made the basis of this suit" the jury answered:

| | |
|---|---|
| Eduardo Gallegos, Jr. | $46.50 |
| Geneva Gallegos | $101.97 |
| Joe Frank Gallegos | $51.50 |
| Lilo Gallegos | $40.87 |
| Lupe Gallegos | $47.50 |
| Minnie Gallegos | $56.47 |
| David Lamas | $74.00 |

In answer to special issue No. 20, inquiring concerning damages to Nick Lamas for personal injuries allegedly suffered by him in the collision, the jury answered nothing. In answer to special issue No. 21, inquiring concerning compensation to Nick Lamas, individually, for medical expenses in the past or future on account of injuries, if any, suffered by him as a proximate result of the collision, the jury answered $12.50.

The trial court rendered judgment on the verdict that Nick Lamas, individually, and

as father and next friend for his minor son take nothing; that Eduardo Gallegos as father and next friend for his six minor children take nothing; and that Eduardo Gallegos, individually, recover from the defendant the sum of $344.81, being the aggregate amount of the jury findings on special issue No. 19 for medical expenses in connection with the injuries suffered by the six Gallegos children.

Appellants, the plaintiffs below, assert by two points that the judgment should be reversed and the cause remanded for new trial because (1) the trial court erred in failing to appoint a guardian ad litem for the minor plaintiffs, and (2) the jury verdict, which failed to award damages for plaintiffs' pain and suffering, is contrary to the overwhelming weight and preponderance of the evidence.

In connection with appellants' first point, the record shows that plaintiffs' original petition alleged that there was a possible conflict of interest between the adult plaintiffs (the fathers who filed the suit on behalf of the minor children) and said children, and prayed that a guardian ad litem be appointed to represent the interest of the minor plaintiffs. In addition, on March 14, 1966, the date the trial began, the adult plaintiffs joined by the attorney of record for all the plaintiffs filed a motion which recited that there was a possible conflict between the minor plaintiffs and their fathers as next friends and also alleged in effect that the next friends were not fully competent or qualified to act as next friends in the case. The motion particularly alleged the following:

"That Eduardo Gallegos can neither read nor write the English language and speaks English very little.

The next friend, Nick Lamas, who also brings the suit individually can neither read nor write the English language nor can he speak the English language with such a degree as to comprehend fully the nature of the proceedings herein.

WHEREFORE Plaintiffs, Eduardo Gallegos, Sr., and Nick Lamas, pray that a Guardian ad Litem be appointed to represent their respective suits herein."

Although the record does not clearly reflect the action of the trial court on the said motion, counsel for appellee has stipulated that the motion was called to the attention of the trial judge and that he declined to appoint a guardian ad litem for the minor plaintiffs. The case went to trial, therefore, with the fathers continuing as next friends, and all the plaintiffs being represented by one attorney.

After judgment was entered on the verdict, as above-mentioned, the plaintiffs filed original and amended motion for new trial. One ground of the amended motion related to the failure of the trial court to appoint a guardian ad litem for the minor plaintiffs. It was alleged in substance that midway in the trial a settlement offer of the defendant in the amount of $3,500.00 was communicated to plaintiffs' attorney covering both the claims of the adult plaintiffs, individually, and the claims of the minor plaintiffs; that this offer was recommended to the next friends by plaintiffs' attorney and they refused to accept it because they wanted more than that sum for themselves. The motion asserted that the failure of the trial court to appoint a guardian ad litem who was qualified to act for the minors and free from conflicts of interest denied due process of law to the minor plaintiffs.

The trial court heard evidence on the Motion for New Trial which included the testimony of the attorney for the plaintiffs and the attorney for the defendant. That testimony substantially supported the allegations of the amended motion. However, it appeared that the alleged offer in settlement actually was a proposal by defendant's counsel to the effect that if a firm offer were made to settle all of plaintiffs' claims for $3,500.000, he would recommend acceptance of same by the defendant. Such a firm offer was not made by counsel for plaintiffs because the two fa-

thers acting as next friends would not agree to settle all claims for the amount of $3,-500.00, despite the advice and strong recommendation of their own attorney to accept such sum. The trial court during the course of the trial was advised of the above negotiations and refusal of the tentative proposal of settlement by the next friends.

On the trial of the case both Eduardo Gallegos and Nick Lamas, the next friends, testified. Lamas had no formal education and could neither read, write, speak or understand the English language. He testified with the aid of an interpreter. Lamas testified concerning his own injuries allegedly suffered in the collision involved in this suit as well as injuries allegedly suffered by the minor plaintiffs. Lamas said that he suffered injuries to his head, neck and ribs because of the collision; that he was still suffering from the effects of it; that he was unable to work and didn't have strength to do so; that he was nervous and unable to concentrate; that his head and neck hurt; and finally, that he was unable to continue his testimony on account of his condition. Lamas was excused temporarily, but was not called further to testify. Before he was so excused, it was developed on cross-examination that he had not held steady jobs over a period of 8 or 9 years; that he had suffered a prior injury on a job at Sugarland, Texas, on account of which he claimed total disability, and was represented on his claim by the same lawyer who appeared for all of the plaintiffs in this case. Gallegos testified that he had no formal education, could not read and write the English language but could speak and understand it, although he had problems with some words; that he had suffered an injury about a year and a half prior to the trial of the instant case, because of being hit on the head with a big steel clamp, and had been under the care of several doctors; that he had also filed a suit because of another injury and had received workman's compensation; that he was represented on that claim by the same attorney who appeared

for the plaintiffs in this case, that he had also been stabbed at a tavern operated by him and had been hospitalized; and that his employment had been irregular. Gallegos also testified concerning the injuries suffered by his children in the collision involved in this suit, which will be more fully discussed under appellants' second point.

Rules 44 and 173, Texas Rules of Civil Procedure provide as follows:

"Rule 44. May Appear by Next Friend

Minors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend' under the following rules:

'(1) Such next friend shall have the same rights concerning such suits as guardians have, but shall give security for costs, or affidavits in lieu thereof, when required.

'(2) Such next friend or his attorney of record may with the approval of the court compromise suits and agree to judgments, and such judgments, agreements and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such suit.' "

"Rule 173—Guardian Ad Litem

When a minor, lunatic, idiot or a non-compos mentis may be a defendant to a suit and has no guardian within this State, or where such person is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor, lunatic, idiot or non-compos mentis, the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs."

These rules are discussed by our Supreme Court in the case of King v. Payne, 156

Tex. 105, 292 S.W.2d 331, 335 (1956). There the court held in part as follows:

"Under the provisions of Article 2159, Vernon's Annotated Civil Statutes, a trial court could appoint guardians ad litem only for incompetent defendants, but Rule 173, Texas Rules of Civil Procedure, expressly provides for the appointment of a guardian ad litem for an incompetent plaintiff or intervenor who is represented by a next friend or a guardian who appears to the court to have an interest adverse to the incompetent. The Court of Civil Appeals in this case, 287 S.W. 2d 294, and the Fort Worth Court of Civil Appeals in the case of Henderson v. Applegate, Tex.Civ.App., 203 S.W.2d 548, 552, writ refused, N.R.E., on which the Court of Civil Appeals in this case relied, appear to have overlooked the fact that in carrying Article 2159 into the Rules of Civil Procedure as Rule 173 this Court enlarged the power of the trial court to appoint guardians ad litem for incompetents.

"Respondents contend that the rights of the minor plaintiffs are governed by Rule 44, Texas Rules of Civil Procedure, which, after providing for suits by 'next friends', expressly provides that 'Such next friend shall have the same rights concerning such suits as guardians have, *but shall give security for costs, or affidavits in lieu thereof,* when required.'

"We see no inconsistency between Rule 173 and Rule 44. Actually, one might say that Rule 173 is complementary of Rule 44 since it is expressly designed for a case in which the incompetent is already represented in the suit by 'next friend' or 'a guardian', but in which the next friend or guardian 'appears to the court to have an interest adverse to' that of the incompetent. Rule 173 thus provides for a contingency not covered by Rule 44, to wit, the appearance, after the suit is filed, of a probable conflict of interest between the real plaintiff in interest and his guardian or next friend. This Court cannot

say that the trial court erred in concluding that there was a probable conflict of interest between Mrs. King and her minor children."

■ It is well settled that the bringing of a suit by next friend for a minor in no way changes his status; his disabilities are are not removed or suspended by bringing such suit, and his interests must, in good faith, be fully protected; he is non sui juris and altogether under the court's protection. Missouri-Kansas-Texas R. Co. of Texas v. Pluto, 138 Tex. 1, 156 S.W.2d 265 (1941); Greathouse v. Fort Worth & Denver City Ry. Co., 65 S.W.2d 762 (Tex.Comm'n App. 1933, holdings approved). In Martin v. Weyman, 26 Tex. 460, 468 (1863) the court said: " * * * The action of the next friend of a minor is within the control of the court. It may at any time, if deemed for the interest of the minor, substitute a new party as his next friend in place of one with whom the suit was originally commenced. * * * " In the case of Henderson v. Shell Oil Co., 179 S.W.2d 386 (Tex.Civ.App. Ft. Worth, 1944), reversed 143 Tex. 412, 182 S.W.2d 994 (1944), the trial court ordered that the original next friend who filed suit for an incompetent should be removed and another person be appointed as next friend to take such further action, if any, as the true interests of the incompetent might require. The Court of Civil Appeals held that the order was reviewable and affirmed the judgment, with one judge dissenting. The Supreme Court reversed the Court of Civil Appeals, holding that the order of the trial court was interlocutory and not appealable and that the appeal should be dismissed for want of jurisdiction. However, both appellate Courts recognized the rule authorizing the trial court to remove the next friend who had brought the suit and to substitute another representative in a proper case. The Supreme Court quoted from the case of Cannon v. Hemphill, 7 Tex. 184, 201 (1851) as follows:

" * * * if the next friend does not lay his case properly before the court by

collusion, neglect or mistake, a new bill may be brought on behalf of the infant."

See also, Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954) affirming in part and reversing in part the judgment of the Court of Civil Appeals, 266 S.W.2d 917.

■ Neither Rule 44 or 173, T.R.C.P. prescribe the qualifications of a person acting as next friend. Generally speaking, anyone who will undertake the office may be the next friend of an infant and may maintain the suit in that capacity, if it appears to the court to be for the benefit of the infant. 30 Tex.Jur.2d, Infants, Sec. 59, p. 712.

■ Appellants point to section 110, Texas Probate Code, V.A.T.S., which provides in part as follows:

"§ 110. Persons Disqualified to Serve as Guardians

The following persons shall not be appointed guardians:

*   *   *   *   *   *

(c) Incompetents.

*   *   *   *   *   *

(d) Those who are themselves parties, or whose father or mother is a party to a lawsuit on the result of which the welfare of the person for whom, or for whose estate, a guardian is to be appointed, may depend.

*   *   *   *   *   *

(f) Those who are unable to read and write the English language.

*   *   *   *   *   *

(h) Those who by reason of inexperience or lack of education, or for other good reason, are shown to be incapable of properly and prudently managing and controlling the ward or his estate. *   *   *"

Appellants argue that because the fathers of the minor plaintiffs herein were disqualified under the provisions of section 110, Texas Probate Code, to be appointed legal guardians of their minor children that they are also disqualified to act as next friends for them in this suit. Appellants say that the statute is designed to protect the interests of minors by disqualifying certain types of persons from acting as guardians, and that a minor suing by next friend should be entitled to an adequate and competent legal representative measured by such standards in order that the minors interests may be properly protected. Section 110, Texas Probate Code, is applicable to proceedings in county courts in the exercise of their probate jurisdiction and to courts especially created and organized for the sole purpose of exercising probate jurisdiction, and is not directly applicable to persons bringing suit as next friends for minor plaintiffs under Rules 44 and 173, T.R.C.P. However, the statute furnishes guidelines for ascertaining whether a next friend suing for a minor is competent or qualified to so act. The allegations in plaintiffs' petition and the separate motion above-mentioned in effect advised the trial court that the fathers who had filed the suit on behalf of the minors as next friends were not competent and qualified to continue to act in such capacity.

■ We believe that in this case the trial court should have granted the motion for appointment of a guardian ad litem to represent the minor plaintiffs and having failed to do so, in the light of subsequent circumstances, should have granted plaintiffs' motion for new trial on the ground that the interests of the minor plaintiffs had not been properly represented during the trial by their next friends.

It is apparent that Lamas and Gallegos were not competent or qualified to act as next friends for their minor children, and that they each had an interest adverse to the minors. Lamas was trying to recover as much as he could on account of his own alleged injuries and at the same time represent his minor son on account of in-

juries suffered by him in the same collision. Lamas' cause of action for his own injuries was clouded by a history of prior injuries, an irregular work record, and a condition of nervousness because of which he did not complete his testimony. Gallegos was not involved in the accident made the basis of the suit, and the only cause of action asserted by him individually was for medical expenses in connection with treatment of his children. But Gallegos' testimony involved prior injuries to himself and an irregular work record not directly related to the injuries of his children. The causes of action asserted on behalf of the minors were mixed up with these other matters involving their fathers individually to such an extent that it appears probable that the cases of the minors were prejudiced thereby. It thus appears that the interests of the minors were not properly represented by their fathers acting as next friends either in the conduct of the trial or in connection with consideration of possible settlement of the case. Under these conditions, the trial court should have granted appellants' motion for new trial.

Appellants' point one is sustained.

Appellants' point two asserts that the jury verdict, which failed to award damages for plaintiffs' pain and suffering, was contrary to the overwhelming weight and preponderance of the evidence. This point is also well taken.

On the trial of the case four witnesses testified, i.e., the defendant Mrs. Velsie Foster Clegg, the adult plaintiffs, Nick Lamas and Eduardo Gallegos, and Dr. Ted Shields.

Mrs. Clegg testified in substance that she stopped the school bus she was driving at a stop sign on Hummel Street in Victoria, Texas and then pulled out slowly into Juan Linn Street and was struck by a car approaching from her right driven by Nick Lamas in which the minor plaintiffs were also riding; that she never saw the Lamas car until immediately prior to the collision; that when she stopped her vehicle the view

was unobstructed for at least one block, possibly two. This testimony apparently was the basis for the jury findings that Mrs. Clegg failed to keep a proper lookout which proximately caused the collision in question. Such findings, which established liability against the defendant, are not questioned on this appeal. Mrs. Clegg further testified that all of the children got out of the Lamas car under their own power; that an officer came on the scene and inquired if anyone was hurt; that one girl had a little bump on her arm; that she said she didn't have it before and the police said "perhaps we better put her in the taxi over there and take her to the Citizens Hospital and have her x-rayed." Mrs. Clegg said that no one else identified themselves as being injured in any way.

Nick Lamas testified through an interpreter that at the time of the collision eight persons were riding in his car: Lamas, his son David and six children of Eduardo Gallegos; that the school bus ran a stop sign, was right on him as he entered the intersection; that he tried to turn to his right; that he applied his brakes and the bus hit him when his car was stopped; that six of the children were in the back seat and Geneva Gallegos was in the front seat with him; that his left front fender and left front bumper were damaged; that his car couldn't be repaired and wasn't used again; that no one was thrown out of his car "but the back seat came over on top of us that were sitting on front." Lamas further testified that the children were crying after the collision; that Geneva Gallegos was taken by taxicab right away to the hospital; that the other children were taken to Doctor Ted Shields that same day about noon and examined by him; that David Lamas was later taken to the hospital; that he and all the children had been back to Dr. Shields many times since the day of the accident. Lamas further testified concerning his own injuries and treatment as well as those of his minor son David. Lamas said that his son stayed in the hospital four or five days and had been

regularly treated by the doctor about twice a week; that he had received medical bills for David.

Eduardo Gallegos testified that he is the father of six minor children who were involved in the automobile accident in question; that Nick Lamas brought the children, except Geneva, in a taxicab to his home, around noon on the day of the accident; that all the children, except Minnie, were crying and he was disturbed about them; that he and his wife took them to the office of Dr. Ted Shields right away, where they were examined; that the children were all in good health prior to the accident; that they had only had usual childhood diseases and treatment for same. He further testified concerning the condition and complaints of his children and that he took them to the doctor for further treatment when necessary or when the doctor gave them appointments; that the children had taken the medicines prescribed by the doctors; that he had observed his children since the accident and had seen them in pain; and that he had incurred expenses for their treatment as shown by the bills in evidence.

Dr. Ted Shields testified in substance that he examined and treated all of the minor children on the day of the accident in question and thereafter. His testimony as to each of them will be briefly summarized.

*Eduardo Gallegos, Jr.,* age 11. This boy complained of pain to his left knee, neck, chest, stomach and to the right inguinal area, where hernias are more frequent. The doctor testified he found a bruise on the left knee, that Eduardo had a muscular sprain to the neck, bruising to the chest and abdomen, and a strain to the inguinal area (lower abdomen). The doctor advised observation at home and that mild analgesics be used. Eduardo returned several times for further examination, complaining of pain in the neck and abdomen. The doctor said that the knee and chest have resolved themselves, and this was true also of the lower abdominal pain which was persistent for a while. The doctor saw Eduardo Gallegos, Jr. a total of eleven times. Eduardo continually complained of pain in neck and abdomen. On one occasion the doctor found and noted muscle spasm on the neck and on another that the neck was stiff with some spasm. The doctor said these were objective findings. Aspirin was prescribed for pain. X-rays were made. The doctor testified that the treatment was necessary and the charges made were reasonable. His bill was $78.00 and the x-ray bill $15.00, aggregating $93.00. These bills were admitted without objection. The jury allowed $46.50, or one-half, for these items. The doctor gave his opinion that Eduardo had suffered pain in the past and would do so in the future on account of his injury, but that there should not be any disability to work.

*Geneva Gallegos,* age not shown by the evidence. This girl complained of pain to her chest, right and left. She had a small laceration on her chin. The doctor made a diagnosis of mild cerebral concussion, probably based upon what she told him. He suspected a neck sprain or whiplash type injury to the neck but found no objective evidence of same. The doctor put Geneva Gallegos in the hospital for observation on account of the head injury. He examined her several times thereafter and she complained of pain to her head, back and spine. The doctor did not list any objective findings. Although Geneva continued to complain of pain to her chest and neck, the same improved and the doctor thought her condition much improved. She neglected to tell him she was pregnant until she was about eight months in that condition. Statements were admitted into evidence without objection reflecting charges for doctor $111.00, X-rays $37.50, prescriptions $11.95, and hospital $47.00, aggregating $207.95, which charges the doctor said were necessary and reasonable for treatment of the injuries. The jury allowed $101.97 for these items. The doctor testified that the injuries and conditions found

had been painful but would be minimal in the future and would not affect future employment.

*Joe Frank Gallegos,* age 3. The doctor found that this boy had bruises to his right cheek, a small blood clot under the skin in his left eyebrow, and a whiplash type sprain to his neck. There were objective findings, particularly the hematoma. The doctor continued treatment from July 27, 1965 up to February 1966. The boy complained of pain in the neck and general body soreness. The blood clot finally became firm and the doctor discussed excising it, but had not done so at the time of trial. The doctor said the injuries were painful and will be so in the future. On one occasion the doctor observed some cervical muscle spasm, which is an objective finding. The doctor said this boy will have difficulty with pain in the neck and with the blood clot which might or might not have to be removed. The whiplash injury is repairing itself but will cause pain in the future. The doctor testified as to reasonableness and necessity of the bills and treatment. The bills, admitted without objection, were doctor $91.00, X-ray $10.00, prescription $2.75, aggregating $103.75. The jury allowed $51.50 for these items.

*Lilo Gallegos,* age 5. The doctor found bruises on this boy's face and chest and said he had abdominal injury, a blow to the stomach. Later, the doctor made diagnosis of a fracture of what he called the costochondral junction (in the area where the rib and cartilage come together in one rib). An objective finding was made as to this condition. The doctor prescribed pain medicine, but did not use a rib belt. The boy complained of abdominal pain and nausea. The doctor said there was muscle spasm to the abdomen. Finally the doctor said the boy had suffered multiple bruises, with some minor internal injuries that did not give him any trouble. The boy was still complaining in February 1966. The objective findings have diminished and the boy had reached his maximum recovery. Expenses were $68.00 for the doctor and

$13.75 for medicines, aggregating $81.75. The jury allowed $40.87 for these items.

*Lupe Gallegos,* age 8. This girl complained of pain to the left eye, left shoulder, left knee and neck. The doctor made diagnosis of whiplash type strain to the neck and bruising to the left knee, the left eye and left shoulder. The patient continued to complain of pain. On one occasion she complained that her neck popped when she bent it forward and backward and the doctor said he could feel this popping. The x-rays showed no dislocations or fractures. The doctor put her on conservative treatment. In February 1966 the doctor found that the muscles in the back of her neck were still kind of tight. The doctor said this girl had suffered pain in the past and would have pain in the neck for a number of months, but that she was essentially recovered. The bills for this girl were $68.00 for the doctor and $27.00 for laboratory work, aggregating $95.00. The jury allowed $47.50 for these items.

*Minnie Gallegos,* age 10. The doctor said that this girl had bruising to the left face and right knee, and he made notation of a painful and stiff neck and that she was nervous and scared. The doctor made diagnosis of contusions of left face and right knee, and pain and stiff neck. There were objective findings, the patient having muscle spasm to the back neck muscles. The doctor prescribed observation at home and aspirin type compounds. About three days after the accident the doctor placed this girl in the hospital for five days because she was complaining of chest pains and nervousness. She had some seizure type episodes. In his final diagnosis the doctor called these petit mal seizures. The doctor suspected that this must have something to do with a little bit harder blow to the head than he had realized on the first examination. The petit mal was an objective finding. The doctor continued to see this girl at his office after her release from the hospital. She continued to complain of dizziness in the head, blurred vision and pain in the neck. She also vomited. Her

symptoms indicated something wrong inside the skull, possibly bleeding. Dr. Shields referred the patient to Dr. Ehlert for eye examination. In February 1966 this girl complained that she could not see at times and Dr. Shields had his secretary write for an appointment for the patient with Dr. Hardy, a neurosurgeon in San Antonio, but did not know what had happened in this connection. The doctor was uncertain concerning future medical expenses. He said that this girl should have further examinations and tests by Dr. Hardy or someone else. The doctor said she had suffered pain in the past and would in reasonable probability suffer pain in the future for a year or so; that the patient had improved but still had the problems with her head and eyes; that she is not an epileptic. The bills, admitted without objection, were doctor $68.00, laboratories $27.00, prescriptions $7.95, aggregating $102.95. The jury allowed $56.47 for these items.

*David Lamas*, age 4. Shortly after the accident the doctor found that this boy was lethargic or drowsy; had muscle spasm in his abdominal wall and in his neck; was dizzy, stunned and had head, neck and chest pain. The doctor put him in the hospital for two full days, where his condition improved. The doctor examined and treated him thereafter, his complaints being chiefly of neck and abdominal pain. The neck has been tender. His most severe complaint was about abdominal pains. The boy later had a hand injury not connected with the accident in question. The doctor said that the pain and suffering in the future might last for two or three months but would not amount to anything; that treatment would be minimal, probably aspirin; that he would expect no permanent disability. Expenses for this boy were $104.00 for the doctor and $44.00 for hospital, aggregating $148.00. The jury allowed $74.00 for these items.

The cross-examination of Dr. Shields tended to show that many of the complaints of the children were subjective and that there were comparatively few objective findings. However, after considering and weighing all of the evidence, including the testimony of the doctor, we believe that the findings of the jury on special issue No. 18 that there was no compensable pain and suffering on the part of each minor plaintiff are against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. See Bolen v. Timmons, 407 S.W. 2d 947 (Tex.Civ.App., Amarillo, 1966, n. w.h.); Edmondson v. Keller, 401 S.W.2d 718 (Tex.Civ.App., Austin, 1966, n.w.h.); Floyd v. Organ, 359 S.W.2d 190 (Tex.Civ. App., Austin, 1962, wr.ref., n.r.e.); Laney v. Hardy, 265 S.W.2d 609 (Tex.Civ.App., El Paso, 1954, n.w.h.); Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954), affirming the Court of Civil Appeals (266 S.W.2d 917) as to reversal and remand of the minor plaintiffs' case and reversing and rendering as to the adult plaintiffs.

In addition, the jury findings on special issue No. 19 are inconsistent with the findings on issue No. 18. In answer to issue No. 19 the jury found that the amounts above set out would conpensate the respective fathers of the seven minor children involved for reasonable and necessary medical expenses incurred in the past and which in reasonable probability would be incurred in the future as a direct and proximate result of the injuries suffered by the minor plaintiffs as a direct and proximate cause of the collision. Thus there is a finding of injury in each case and necessity for treatment as a result of the accident. Although the injuries of said children varied in degree and extent, it appears from the evidence herein that they would ordinarily and in reasonable probability be accompanied by some physical pain. There is no evidence in this case which would tend to show the contrary. In order to uphold the jury finding on special issue No. 18 (that nothing should be awarded for physical pain and suffering on the part of the minor plaintiffs) we would be required

to hold that a preponderance of the evidence establishes that the injuries, including lacerations, bruises, hematoma, muscle spasm and fracture, which required the expenses for the doctor, hospital and other services (as found by special issue No. 19) were totally unaccompanied by any physical pain. We are unable to so hold on the record presented here. On the question of an award for medical expenses without an award for pain and suffering, see 20 A.L. R.2d 276 and Vol. 3, Later Case Service A.L.R.2d 148.

 In this case the liability of the defendant was established by the jury findings as to all the plaintiffs except Nick Lamas individually. We are not here presented with a question of inadequacy of an award for some amount of damages, but whether the complete denial of any damages for physical pain was proper. The applicable rule is stated in Edmondson v. Keller, Austin, Tex.Civ.App., 401 S.W.2d 718, 720, as follows:

> "The amount of damages is largely within the jury's discretion. However, they must award something for every element of damage resulting from an injury. Evers v. Langerhans, Tex.Civ.App., 122 S.W.2d 208, n.w.h.; Clark v. Spurdis, Tex.Civ.App., 258 S.W. 881, error dism."

Appellants' point two is sustained.

 We have no alternative but to affirm the judgment as to Nick Lamas, individually, since the findings convict him of contributory negligence proximately causing the collision in question, which preclude a recovery on his cause of action individually. But this result does not affect the cause of action asserted on behalf of his minor son David Lamas. See Thacker v. J. C. Penney Company, 254 F.2d 672 (5 Cir.1958) and the Texas cases therein cited.

The judgment of the trial court will be affirmed as to Nick Lamas, individually, and will be reversed and remanded for new trial as to all other appellants.